Douglas C. JONES

v.

Martha SASSONE, Judge, et al.

No. CIV.A.99–2904.

United States District Court,
E.D. Louisiana.

May 30, 2002.

Jane L. Johnson, Miranda L. Wang, Tulane Law Clinic, New Orleans, LA, Reginald James Laurent, Law Office of Reginald J. Laurent, Slidell, LA, for Douglas C Jones, plaintiff.

Richard Terrell Simmons, Jr., Kurt D. Engelhardt, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, for Martha Sassone.

Daniel Rault Martiny, Franz L. Zibilich, Martiny & Caracci, Metairie, LA, for Harry Lee, Robert Rotherham, Troy Bradbury, John Doe Chirchirillo.

John Jackson Molaison, Jr., District Attorney's Office, Parish of Jefferson, Gretna, LA, Terry Michael Boudreaux, Jefferson Parish District, Attorney's Office, Gretna, LA, for Paul Connick, Joseph Roberts, Vincent Paciera.

Kenneth Joseph Beck, Harvey, LA, for Louis Marcotte.

Brian Thomas Carr, Carr & Clark, Metairie, LA, for City of Jefferson Parish.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment" of Paul D. Connick, Jr., Vincent Paciera, Jr., and Joseph Roberts is **GRANTED.** (Document # 77.)

### I. BACKGROUND

On July 14, 1999, Douglas C. Jones was arrested and charged with one count of simple burglary, which was later dismissed. Thirty days later, he was charged with another count of simple burglary, and Judge Martha Sassone set his bail at $700,000. Jones, a pretrial detainee, filed a civil rights action against Judge Martha Sassone; Sheriff Harry Lee, District Attorney Paul Connick, Assistant District Attorneys Joseph Roberts [1] and Vincent Paciera, Captain John Chirchirillo, Detectives Robert Rotherham and Troy Bradbury, each in their individual and official capacity. Jones also brought suit against bail bondsman Lee Marcotte, Jefferson Parish, and the City of Gretna.

Jones alleges violations of his constitutional rights under 42 U.S.C. §§ 1981, 1983 (Fourth Amendment search and seizure, Fourteenth Amendment due process and equal protection), 1985 and 1986 (conspiracy to deny civil rights); a violation of 18 U.S.C. § 1961–68 (RICO); and violations of the constitution of the State of Louisiana.[2]

Jones's claims arise from his classification and processing through the "Code 6" unit of the Jefferson Parish Sheriff and District Attorney's offices. The Jefferson Parish Sheriff's Office established the "Code 6" Career Criminal Intercept Unit and the Vertical Prosecution Program to reduce crime by prosecuting the criminals who are responsible for a majority of the crime. The program is based on studies and experience which indicate that the recidivist is a small but chronic percentage of the criminal population who is responsible for a large and disproportionate share of crime.

The Code 6 program is composed of three components which are designed to insure that

(1) the participants are objectively identified through a 20 point rating system which takes into account felony arrests, convictions and evaluates the total criminal history accumulated including pending charges. Heavy emphasis is placed on crimes of violence, drugs, and weapons and attention is also given to an individual who has obtained five or more felony arrests in three different crime categories or an individual who has obtained a felony arrest within thirty months of the current charge.

(2) individuals are selectively incapacitated from society by the Code 6 partici-

---

1. Roberts was assigned to the case after prosecution was initiated and withdrew from the case prior to Jones's guilty plea.

2. Judge Clement made the following rulings on the motions to dismiss and for summary judgment of Judge Sassone and the prosecutors. The court dismissed all claims against Judge Sassone in her official and individual capacity, the § 1983 equal protection claim against Connick, and, as to Connick, Roberts, and Paciera, dismissed the RICO claims, the § 1981 claim, the § 1983 claim for excessive bail, the Fourteenth Amendment due process claim, and the Fourth Amendment claim for the unreasonable search of Jones prison cell and seizure. The court denied the motion to dismiss the § 1983 equal protection claim against Roberts and Paciera and the §§ 1985 and 1986 claim of conspiracy to deprive Jones of equal protection against the prosecutors.

pants appealing to magistrates to enhance bonds based on either the severity of the charge or the criminal history of the offender as reflected by the point total criteria;

(3) individuals who are identified are then vertically prosecuted by the Code 6 special prosecutor who uses the State's Habitual Offender Law to enhance sentences through multiple billing. Once assigned to the Vertical Prosecution program, the individual is administratively classified as a "Red File" connoting a high rating with one or more prior felony convictions. All other accepted defendants are classified as a "Blue File" and are noted as target offenders that rate high on the criteria. Blue file individuals are prosecuted by the regular division district attorneys with special supervisory instructions regarding pleas or disposition of sentencing.

Connick, Roberts and Paciera (collectively, the prosecutors) filed a motion for summary judgment seeking to dismiss the claims against them.[3] The outstanding claims that are the subject of this motion are the §§ 1985(3) and 1986 claims against the prosecutors[4] and the § 1983 equal protection claim against Roberts and Paciera in their individual capacity.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir.1991); Fed.R.Civ.P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

**3.** Prior to filing this motion for summary judgment, the prosecutors filed a notice of appeal to the United States Court of Appeals for the Fifth Circuit. In response to a motion for a stay pending appeal, Judge Clement requested that the prosecutors brief two issues: whether petitioner met the Code 6 criteria and whether the defendants are entitled to qualified immunity. The defendants briefed these issues in a memorandum filed on November 8, 2001; however, Judge Clement was appointed to the Court of Appeals and left the district court. The appeal was dismissed without prejudice on February 4, 2002, upon the appellants' motion.

**4.** Section 1985(3) provides:
(3) If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1986 provides:
Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do ... shall be liable to the party injured ... which such person by reasonable diligence could have prevented.

## B. Absolute immunity on the § 1983 equal protection claim

Roberts and Paciera argue that they are entitled to absolute immunity in their individual capacities. They contend that it is undisputed that they did not promulgate the Code 6 program, the sheriff rather than the prosecutors classified Jones as a career criminal, and Jones's rating of 19 out of 20 indicates that he met the Code 6 criteria. They contend that the functions performed by the assistant district attorneys relate solely to prosecution and that those functions are protected by absolute immunity.

■ "Absolute immunity applies to activities, not offices." *Bryan v. City of Madison, Mississippi*, 213 F.3d 267, 271 (5th Cir.2000). Prosecutors enjoy absolutely immunity for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). The prosecutor is immune from civil suit "in initiating a prosecution and in presenting the State's case." *Id.* "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Kerr v. Lyford*, 171 F.3d 330, 337 (5th Cir.1999) (internal quotation and citation omitted).

The summary judgment evidence establishes that the activities of the prosecutors were an integral part of the judicial phase of the criminal process. Paciera presents an affidavit explaining the procedure that was followed in Jones's case. The District Attorney's office received Jones's case from the Jefferson Parish Sheriff's office after it had been determined that Jones met the Code 6 criteria. Paciera screened Jones's case on the merits and determined that the charges should be accepted.

Jones had a rating of 19 out of 20 possible points, and it is the general practice of the district attorney's office to assign a defendant with a rating of 17 or over to Code 6 prosecution. Jones eventually pleaded guilty to two counts of simple burglary of an inhabited dwelling and conspiracy to intimidate a witness.

Roberts states in his affidavit that he was previously assigned to the Code 6 section of the district attorney's office, but that he did not screen the Jones case to determine if Jones met the Code 6 criteria. He was originally assigned to the case for trial but withdrew after it was thought that he could be a witness after he viewed papers that were seized from Jones's prison cell. Jones's case was assigned to Assistant District Attorney Ron A. Austin, a felony assistant who was not assigned to the Code 6 section.

■ Paciera's conduct in screening Jones's case, determining that Jones's rating exceeded the 17–point minimum previously established by the District Attorney's policy, and referring the case for Code 6 prosecution, and Roberts' brief assignment as a Code 6 prosecutor prior to his withdrawal are activities that are intimately associated with the judicial phase of the criminal process. Accordingly, absolute immunity applies, and Jones's § 1983 equal protection claim against Paciera and Roberts is dismissed.

## C. Sections 1985(3) and 1986 claims

Jones alleges that the prosecutors' conduct violated §§ 1985(3) and 1986. In order to prevail in a claim under § 1985(3), Jones must establish "that (1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement." *Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, 270

(5th Cir.2001); *see Bryan*, 213 F.3d at 276 (plaintiff must allege that there was a race-based conspiracy to violate his civil rights). A valid § 1985 claim is a prerequisite to a § 1986 claim.

The prosecutors have presented the Code 6 Manual and various affidavits in support of their summary judgment motion. The Code 6 Manual outlines the following criteria for Code 6 designation. The intensive criteria rating scale is applied only to individuals who have accumulated at least five felony arrests and/or at least two felony convictions. The intensive criteria rating scale is composed of seven categories with a point value assigned to each category. The categories are: crime of violence category (maximum of eight points), three-crime categories (one point), drug category (two points), juvenile felony category (one point), firearms category (two points), felony within thirty months (one point), and felony convictions (maximum of five points).

The affidavit of Judge Walter J. Rothschild, who was employed by the Jefferson Parish District Attorney's Office from June 1984 to March 1989 and from December 1991 to February 1995, states that the criteria of the Code 6 program are objective and that the program was not created to target anyone on the basis of race, gender or economic status. Paciera and Roberts state in their affidavits that race or gender were never used as factors in considering whether to prosecute a case.

█ At a hearing on the prosecutors' motion for summary judgment, Jones objected to the Code 6 classifications as arbitrary but conceded that he had presented no evidence of discrimination based on race. Jones has not established that a racial discriminatory animus lay behind the alleged conspiracy, and his claim fails. Because Jones has not presented a valid § 1985 claim, his § 1986 claim also fails.

## III.  CONCLUSION

In summary, Roberts and Paciera enjoy absolute immunity from suit on Jones's § 1983 claim that they violated his rights under the Equal Protection Clause. Further, Jones has failed to establish that the prosecutors were part of an alleged conspiracy to formulate and implement the Code 6 program based on racial discriminatory animus in violation of §§ 1985(3) and 1986. Accordingly, there are no disputed issues of material fact and the prosecutors are entitled to judgment as a matter of law.